UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CORNELIUS L. HINES, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:20-cv-00331-JMS-DLP |
| WARDEN, | ) ) ) |
| Respondent. | ) ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Indiana prison inmate Cornelius Hines petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number NCF 19-08-0182. For the reasons explained in this Order, Mr. Hines' petition is **denied.**

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B. The Disciplinary Proceeding**

On August 23, 2019, Indiana Department of Correction ("IDOC") Officer Marion wrote a Report of Conduct charging Mr. Hines with a code A-102 violation, battery. Dkt. 12-1.

> I Ofc. Marion on the above date and approximate time was assisting with a signal 3000 in RSH 318 due to Offender Hines # 197063 appearing to be having a seizure. Offender Hines then became combative. I told Offender Hines several times to stop resisting. Offender Hines then bit me in my right hand. Offender Hines was advised of conduct report.

*Id*. The conduct report contained a note that Mr. Hines' behavior was not related to mental health symptoms. *Id.* Photographs of Officer Marion and his right hand were taken after the incident occurred. Dkt. 12-2; dkt. 12-3; dkt. 12-4. A detailed narrative of the incident also documented that Mr. Hines began resisting after he started recovering from his seizure and pulled Officer Marion's hands toward his mouth and bit Officer Marion. Dkt. 12-14. Officer Marion was taken to the emergency room for assessment. *Id.*

Mr. Hines received notice of the charge on August 26, 2019, when he received the Notice of Disciplinary Hearing Screening Report. Dkt. 12-5. Mr. Hines pled not guilty; requested and was provided a lay advocate; requested several witness statements from Sgt. Gilbert, Lt. Ingermann, and Martin, regarding whether a person could become combative after a seizure and/or try to bite; and requested "paperwork showing description of side effects when coming out of a seizure." *Id.*

Witness statements were obtained from Lt. Ingermann and Sgt. Gilbert as well as a statement from the facility's healthcare services administrator. Lt. Ingermann stated that Mr. Hines had in the past become combative when he came out of a seizure and almost bit Ingermann and his staff. Dkt. 12-7; dkt. 12-13. The healthcare services administrator confirmed with Dr. Falconer that "during true seizure activity a person seizing would not bite someone unless the person put fingers or body parts into the seizing person's mouth." Dkt. 12-15. Nurse Martin provided a

statement that a signal 3000 was called to Mr. Hines' cell because he was having "seizure-like activity" and then became combative and bit Officer Marion, but in her medical opinion, "a person coming out of a true seizure would not be able to pull another person's hand to his mouth and bite down." Dkt. 12-10; dkt. 12-11. Sgt. Gilbert provided a statement that he was not present during the incident. Dkt. 12-12.

After multiple postponements, a disciplinary hearing was conducted on September 30, 2019. Dkt. 12-9. Mr. Hines stated that he "could not pull [the officer's] arm I was cuffed. I did not intentionally do anything." *Id.* The disciplinary hearing officer ("DHO") considered the staff reports, statement of offender, evidence from witnesses including Dr. Falconer, the detailed incident report, and pictures taken after the incident, and found Mr. Hines guilty. *Id.* His sanctions included a deprivation of 180 days' earned credit time and a credit class demotion. *Id.*

Mr. Hines appealed to the Facility Head and the IDOC Final Reviewing Authority, but both appeals were denied. Dkt. 12-16; dkt. 12-17. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**C. Analysis**

The Court construes that Mr. Hines raises the following grounds in his petition: (1) he was denied an impartial decision-maker; (2) the DHO refused to consider his evidence regarding the side effects of seizures; (3) there was insufficient evidence to support his charge; and (4) the discipline he received violated his Eighth Amendment rights. Dkt. 1.

**1. Impartial Hearing Officer**

Mr. Hines contends that he was found guilty before he entered the hearing and because an officer was injured in the line of duty, he would have been found guilty with or without evidence. *Id.* at 2. In his reply, he alleges that the DHO was biased because he and Officer Marion work side

3

by side and talk with each other. Dkt. 19. These assertions amount to an argument that Mr. Hines received a "rubber stamp" of guilt but they do not overcome the presumption that the DHO was impartial.

A prisoner in a disciplinary action has the right to be heard before an impartial decision maker. *Hill*, 472 U.S. at 454. However, hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Hines presents mere conclusory statements that the DHO was biased – he provides no evidence that the DHO directly or substantially participated in the factual events or investigation underlying Mr. Hines' disciplinary charge. Furthermore, there is no evidence in the record that the DHO and Officer Marion, colleagues at the same facility, had a disqualifying relationship that would overcome the presumption of impartiality. *See, e.g., Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002) (noting that a prisoner's due process right to an impartial decision-maker might be violated if the officer on the review board was engaged in an intimate, romantic relationship with one of the witnesses crucial to the prosecution.). No such relationship is shown or suggested in this case.

Accordingly, Mr. Hines' request for relief on this ground is **denied**.

### 2. Consideration of Evidence

Mr. Hines states he asked for "paperwork showing side effects when coming out of seizures" at screening and that he had his own copy of a document titled Seizure Disorder/Epilepsy that was not considered. Dkt. 1 at 2. The Court has reviewed this document at docket 1-2 and notes that Mr. Hines has underlined paragraphs in it that define seizure disorder, grand-mal seizures, and symptoms of generalized seizures that could cause a person to experience injuries and accidents such as tongue biting, urinary incontinence, or dropping or involuntarily throwing objects. *Id.* It is not evident from the screening report that Mr. Hines requested that this specific document be reviewed by the DHO at the hearing. *See* dkt. 12-5 (general description of "paperwork" requested to show side effects when coming out of a seizure).

The respondent argues that the DHO did obtain and consider paperwork, "in the form of witness statements" regarding medical opinions of whether a person having a legitimate seizure could pull someone's hand toward him and bite him. Dkt. 12 at 8. These statements and medical opinions were provided by Dr. Falconer, Nurse Martin, and the healthcare services administrator. The DHO indicated these statements were considered in the finding of guilt. Mr. Hines argues that his medical condition causes him to be punished. Dkt. 19. The evidence collected by the DHO was responsive to Mr. Hines' request regarding side effects of seizures, namely, could someone having a seizure bite another person. Dr. Falconer and Nurse Martin's responses indicated their belief that Mr. Hines was not having a true seizure if he pulled Officer Marion's arm toward his mouth and bit him, as indicated occurred in the incident and conduct reports.

To the extent Mr. Hines argues that he should have been entitled to present this specific document, due process allows a limited opportunity to present evidence to an impartial decision-maker. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563–67. That right is limited in that it extends only

5

to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). As the petitioner, Mr. Hines bears the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). Mr. Hines has not shown how this document would have specifically helped him or how it creates a reasonable probability that the outcome of the DHO's decision would have been different. The respondent argues that the information "generally discusses the effect of a seizure on the person having the seizure, but says nothing about the person deliberately biting someone, which is what the conduct report says happened when Hines resisted Officer Marion." Dkt. 12 at 9. The Court agrees. Any error related to the DHO not considering this document is harmless in light of other evidence relied upon by the hearing officer. *See Piggie*, 344 F.3d at 678 (applying harmless error doctrine to prison disciplinary cases).

Accordingly, Mr. Hines' request for relief on this ground is **denied**.

### 3. Sufficiency of Evidence

Mr. Hines argues that there is no evidence beyond speculation and opinions to support or back up the conduct report. Dkt. 1 at 2-3. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the

6

disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

An inmate violates code A-102 by "[k]nowingly or intentionally touching another person in a rude, insolent, or angry manner[.]" Dkt. 12-18. The Court notes the respondent's argument that Mr. Hines does not deny that biting someone is battery or that he bit Officer Marion, and that no evidence supports that he bit Officer Marion because he was having a seizure. Dkt. 12 at 10-11. The DHO considered Mr. Hines' statement which only stated that he could not pull Officer Marion's arm while handcuffed and did not do anything intentionally. Dkt. 12-9. The DHO considered the conduct report which detailed that Mr. Hines "appeared to be having a seizure" but became combative, resisted, and then bit Officer Marion's right hand. Dkt. 12-1. This alone provided some evidence of the charge. Further, witness statements and medical statements corroborated that Mr. Hines has become combative in the past and almost bit staff, and a person having a true seizure could not pull a person's hand to his mouth and bite down.

Mr. Hines in effect is asking the Court to re-weigh the evidence or assess the credibility of any witnesses, something it cannot do. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not in our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.").

Accordingly, Mr. Hines' request for relief on this ground is **denied**.

### 4. Failure to Exhaust Eighth Amendment Claim

The Court notes that the respondent did not have or file the content of Mr. Hines' appeals but provided the denials of the appeals for the record. Dkt. 12 at 4. Mr. Hines' petition does include

some information regarding his appeals. Dkt. 1-2 at 19. The respondent argues that Mr. Hines did not exhaust his administrative remedies regarding his claim that the discipline he received violated his Eighth Amendment rights. Dkt. 12 at 11. By Mr. Hines' own admission in his petition, he did not raise this issue in his lower level appeals because he did not receive the United States Constitution paperwork until after his appeals and states he did not understand until someone explained this potential claim to him. Dkt. 1 at 4.

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Final Reviewing Authority may be raised in a subsequent petition for writ of habeas corpus unless a showing of "cause and prejudice or a miscarriage of justice (meaning conviction of an innocent person)" has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018); *Eads*, 280 F.3d at 729; *Moffat*, 288 F.3d at 981. Mr. Hines has not shown cause and prejudice.

Accordingly, Mr. Hines' request for relief on this ground is **denied**.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Hines to the relief he seeks. Accordingly, Mr. Hines' petition for a writ of habeas corpus challenging IDOC disciplinary case number NCF 19-08-0182 is **denied** and this action is **dismissed** with prejudice. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 1/11/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CORNELIUS L. HINES
197063
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov